| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Brandon J. Iskander<br>Goe Forsythe & Hodges LLP<br>17701 Cowan<br>Building D<br>Suite 210<br>Irvine, CA 92614<br><br>949-798-2460<br><br><br><br>*Plaintiff or Attorney for Plaintiff* | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE

| In re:<br><br>Young Suk Lee<br><br><br>Debtor(s). | CASE NO.: 6:24-bk-13975-RB<br><br>CHAPTER: 7<br><br>ADVERSARY NUMBER: 6:24-ap-01068-RB |
|---|---|
| Charles W Daff<br><br><br>Plaintiff(s)<br>Versus<br>Eun Kyung Rah aka Eun Kyong Rah<br><br><br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** |

TO THE DEFENDANT(S): A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper-hand corner of this page. The deadline to file and serve a written response is **09/16/2024.** If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| | |
|---|---|
| **Date:** | **November 19, 2024** |
| **Time:** | **02:00 PM** |
| **Hearing Judge:** | **Magdalena Reyes Bordeaux** |
| **Location:** | **3420 Twelfth St., Crtrm 303, Riverside, CA 92501** |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                     Page 1                     **F 7004-1.SUMMONS.ADV.PROC**

**You must comply with LBR 7016–1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court–approved joint status report form is available on the court's website (LBR form F 7016–1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016–1.STATUS.REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

**KATHLEEN J. CAMPBELL**
**CLERK OF COURT**

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: <u>August 16, 2024</u>

By: <u>    "s/" Susan Hawkinson    </u>

Deputy Clerk



This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                     Page 2                     **F 7004–1.SUMMONS.ADV.PROC**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004–1]** and (2) the accompanying pleading(s) entitled:

_____

_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005–2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐  Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (<u>state method for each person or entity served</u>): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| _____ | _____ | _____ |
|-------------------|----------------------------------|----------------------------------|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2016

**F 7004–1.SUMMONS.ADV.PROC**

# UNITED STATES BANKRUPTCY COURT

## Early Meeting of Counsel and Status Conference Instructions

## Effective
## March 28, 2022

1.    **Service of Order.**  A copy of this Order must be served with the summons and complaint under Rule 26(f) Meeting, Initial Disclosures, and Scheduling Conference.  The proof of service must indicate service of the summons, complaint, and copy of this Order.

2.    **Local Bankruptcy Rule 7026-1**.  Compliance with Local Bankruptcy Rule 7026-1 ("LBR 7026-1") is required in ALL adversary proceedings.

3.    **Rule 26(f) Meeting**.  Parties must meet and confer under Rule 26(f) of the Federal Rules of Civil Procedure ("Rule 26(f) Meeting") at least 21 days before the status conference date indicated in the summons unless all defendants default.

The parties are jointly responsible for scheduling and attending the Rule 26(f) Meeting. During the Rule 26(f) Meeting, the parties must:

(a)  discuss the nature and basis of their claims and defenses, as well as the possibilities for a prompt settlement or resolution of the case;

(b) make or arrange for the initial disclosures required by Rule 26(a)(1); and

(c) develop a proposed discovery plan.

***The parties are directed to approach a Rule 26(f) Meeting cooperatively and in good faith.***

***The discussion of claims and defenses must be substantive and meaningful.***

4.    **Rule 26(a)(1) Initial Disclosures**.  Under Rule 26(a)(1), a party must, without waiting

for a pending discovery request, provide to other parties:

a.    The name and, if known, the address, and telephone number of each individual

likely to have discoverable information along with the subjects of that

discoverable information that the disclosing party may use to support its claims or

defenses, unless the use of this discoverable information would be solely for

impeachment;

b.    A copy of all documents, electronically stored information, and tangible things

the disclosing party has in its possession, custody, or control and may use to

support its claims or defenses, unless the use of these documents, electronically

stored information, and tangible things would be solely for impeachment. (*If

copies of the above are unavailable, you must provide a description by category

and location of such documents, electronically stored information, and tangible

things*);

c.    A calculation of all damages claimed by the disclosing party. Under Rule 34, the

disclosing party must also make available for inspection and copying all

documents and evidentiary materials on which each calculation is based, which

includes but is not limited to materials relating to the nature and extent of injuries

suffered, unless such documents and evidentiary materials are privileged or

protected from disclosure;

d.    Under Rule 34, the disclosing party must make available for inspection and

copying any insurance agreements where an insurance business is or may be

liable to satisfy all or part of a possible judgment in the action or to indemnify or
reimburse for payments made to satisfy the judgment.

F.R.Civ.P. 26(a)(1)(A).  Rule 26(a)(1) requires a party to make its initial disclosures based on the
information then reasonably available to it.  A party is not excused from making its disclosures
because it has not fully completed its investigation of the case or because it challenges the
sufficiency of another party's disclosures or because another party has not made its disclosures.
F.R.Civ.P. 26(a)(1)(E).

**5**.    __Rule 16(b) Scheduling Conference__. The initial status conference scheduled by the Court
in the summons shall also serve as the initial Rule 16(b) Scheduling Conference in this adversary
proceeding.

**6**.    __Alternative Dispute Resolution ("ADR")__.  The parties must explore the feasibility of
ADR to reach a settlement or early resolution of the adversary proceeding.  The reasons for not
participating in a form of early ADR must be explained in the Joint Status Report.  If parties
elect not to participate in early ADR effort(s), the Court could direct parties to ADR before trial.

**7**.    __Discovery Plan.__  At the Rule 26(f) Meeting, parties must also discuss any issues about
preserving discoverable information and develop a proposed discovery plan.  The discovery plan
discussion following the initial disclosures must address the relevance of the discovery sought
and the sequence and timing of such discovery, including how such discovery will be conducted.
The discovery plan deadlines must be mutually agreed upon, with a goal to achieve resolution of
the case with minimum expense and delay.

**8**.    __Joint Status Report__. Not later than 14 days before the status conference/Rule 16(b)
Scheduling Conference date set forth in the summons, the parties must file a Joint Status Report
using mandatory **LBR Form F 7016-1.1.**  The Joint Status Report must contain the information

set forth in LBR 7016-1(a)(2), and a statement that the parties completed the Rule 26(f) Meeting

and that the parties made the initial disclosures required by Rule 26(a)(1).  The Joint Status

Report shall also serve as the written report of the Rule 26(f) Meeting.

Please note that under Local Bankruptcy Rule 7016-1(a)(3), if any party fails to cooperate

in the preparation of a joint status report, each party is required to file a unilateral status report

not less than 7 days before the date scheduled for the status conference. The status report should

include a declaration indicating the attempts made by each party to contact or obtain the

cooperation of the non-complying party in the preparation of a joint status report.

Parties are excused from filing a status report if one of the following is true:

(1)     prior to the date scheduled for the status conference, the parties filed, and the

        Court entered an order approving a stipulation that resolves all issues raised by

        the adversary proceeding and provides either for dismissal of the action in its

        entirety or the entry of judgment in the action;

(2)     defaults were entered as against all defendants and the plaintiff filed and served a

        motion for default judgment prior to the date scheduled for the status conference;

(3)     the parties filed and, prior to the date scheduled for the status conference, the

        Court entered an order approving, a stipulation continuing the status conference to

        a later date (in which case a written status report must be filed not less than 7 days

        in advance of the continued status conference date); or

(4)     The Court expressly relieved the parties of the obligation to file a written status

        report.

**9**.     **Status Conference / Rule 16(b) Scheduling Conference**.  At the Rule 16(b) Scheduling

Conference, the Court will review the discovery plan set forth in the Joint Status Report and set

appropriate deadlines.  The Court seeks to try all adversary proceedings not later than 18 months

after filing of the complaint.  Consequently, all deadlines in the schedule, including the

dispositive motion deadline, must be met within 12 to 14 months after filing of the complaint to

afford adequate time for briefing and ruling prior to the final pretrial conference and trial date.

Counsel representing any party in conjunction with the Rule 26(f) Meeting, Joint Status

Report, and Rule 16(b) Scheduling Conference must be authorized to bind the party on all

matters to be covered.

**10.**    **Default.**  If no timely response to the complaint is filed with the Court, the plaintiff may

request entry of default by the clerk <u>prior</u> to the status conference date shown in the summons.

F.R.Civ.P. 55(a).  The plaintiff may also request entry of a default judgment by filing and

serving an appropriate motion.  F.R.Civ.P. 55(b)(2).

**11.**    **Sanctions.**  Failure to comply with these instructions may subject the responsible party

and/or counsel to sanctions.  The failure of either party to cooperate in the preparation and filing

of a Joint Status Report or appear at the status conference may result in the imposition of

sanctions under LBR 7016-1(f) or (g).

Magdalena Reyes Bordeaux

United States Bankruptcy Judge

1  Robert P. Goe – State Bar No. 137019
   Brandon J. Iskander – State Bar No. 300916
2  **GOE FORSYTHE & HODGES LLP**
   17701 Cowan Avenue, Suite 210, Lobby D
3  Irvine, CA 92614
   rgoe@goeforlaw.com
4  biskander@goeforlaw.com

5  Telephone:  (949) 798-2460
   Facsimile:   (949) 955-9437
6
7  Proposed Attorneys for Plaintiff Charles W. Daff,
   Chapter 7 Trustee

8              **UNITED STATES BANKRUPTCY COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION**

10

11 | In re: | Case No.  6:24-bk-13975-RB |
|---|---|
12 | YOUNG SUK LEE, | Chapter 7 Proceeding |
13 | Debtor. | Adv. No.: 6:24-ap-_____-RB |
14 | | **COMPLAINT FOR:** |
15 | | 1. **AVOIDANCE AND RECOVERY OF INTENTIONAL FRAUDULENT TRANSFERS AND RECOVERY OF SAME [11 U.S.C. §§ 544, 548, 550, 551; CAL. CIV. CODE §§ 3439.04, 3439.07];** |
16 | CHARLES W. DAFF, solely in his capacity as chapter 7 trustee for the bankruptcy estate of YOUNG SUK LEE, | |
17 | | |
18 | Plaintiff, | 2. **AVOIDANCE AND RECOVERY OF CONSTRUCTIVE FRAUDULENT TRANSFERS AND RECOVERY OF SAME [11 U.S.C. §§ 544, 548, 550, 551; CAL. CIV. CODE §§ 3439.04, 3439.05, 3439.07];** |
19 | v. | |
20 | EUN KYUNG RAH aka EUN KYONG RAH, an individual, | |
21 | | |
22 | Defendant. | 3. **DECLARATORY RELIEF [11 U.S.C. §§ 544, 548; FED. R. BANKR. P. 7001(9)];** |
23 | | |
24 | | 4. **UNJUST ENRICHMENT [11 U.S.C. § 105];** |
25 | | |
26 | | 5. **DISALLOWANCE OF CLAIMS [11 U.S.C § 502(d)]; AND** |
27 | | |
28 | | 6. **TURNOVER OF PROPERTY OF THE ESTATE [11 U.S.C. § 542].** |

1

Charles W. Daff ("Trustee"), solely in his capacity as the duly-appointed, qualified, and acting Chapter 7 trustee ("Trustee" or "Plaintiff") for the bankruptcy estate ("Estate") of Young Suk Lee ("Debtor"), hereby brings this Complaint against Eun Kyung Rah ("Defendant") and respectfully complains and alleges as follows:

## I.    SUBJECT MATTER JURISDICTION AND VENUE

1.    This adversary proceeding is filed pursuant to Federal Rule of Bankruptcy Procedure, Rules 7001(1) (a proceeding to recover money or property) and (9) (a proceeding to obtain a declaratory judgment relating to any of the foregoing).

2.    Plaintiff, as Trustee for the Debtor's bankruptcy estate ("Estate") has standing to bring this action under 11 U.S.C. §§ 323, 544, 547, 548, and 550.

3.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 in that this action arises in and relates to the Debtor's bankruptcy pending in the United States Bankruptcy Court for the Central District of California, Riverside Division entitled *In re Young Suk Lee*, Case No. 6:24-bk-13975-RB ("Main Bankruptcy Case") on the Court's docket.

4.    This action is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) (matters concerning the administration of the Estate), and (b)(2)(H) (proceeding to determine, avoid or recover fraudulent conveyances).

5.    Venue is proper in this District pursuant to 28 U.S.C. § 1409(a), as this adversary proceeding arises under Title 11, or relates to a case under Title 11, which is pending in this District and does not involve a consumer debt less than $22,700.00.

6.    Venue in this judicial district is appropriate under 28 U.S.C. §§ 1409(a) and/or (c) because Debtor's bankruptcy case is pending in the Central District of California.

7.    To the extent that the Plaintiff asserts claims under 11 U.S.C. § 544, the Plaintiff is informed and believes and based thereon alleges that there exists in this case one or more creditors holding unsecured claims allowable under 11 U.S.C. § 502 or are not allowable under 11 U.S.C. § 502(e), who can avoid the respective transfers as set forth hereinafter under California or other

applicable law.

## II.    THE PARTIES

8.    Plaintiff is the duly-appointed, qualified, and acting Chapter 7 Trustee for the Debtor's Estate and brings the claims asserted herein solely in that capacity.

9.    Plaintiff is informed and believes and based thereon alleges that Eun Kyung Rah ("Defendant"), is an individual residing in Riverside County, California and is the former spouse of the Debtor.  Defendant is the transferee of the Transfer (defined below).

## III.    GENERAL ALLEGATIONS

10.    The allegations contained in paragraphs 1-9, inclusive, are re-alleged and incorporated herein by this reference, as though set forth in full.

11.    At all relevant times alleged herein, the Defendant is an individual residing in Riverside County, California.

12.    Beginning July 13, 2010, Debtor owned the real property located at 36178 Coffee Tree Place, Murrieta, CA 92562 ("Property"). Debtor took title to the Property via Grant Deed recorded on July 13, 2010 in the Official Records of the Riverside County Recorder's Office as Document No. 2010-0326371, with title vesting in: "YOUNG SUK LEE, a Single Man."  A true and correct copy of the July 2010 Grant Deed is attached hereto and incorporated herein as **Exhibit "1."**

13.    Also on July 13, 2010, the Property was encumbered with a purchase money deed of trust ("July 2010 Deed of Trust") recorded in the Official Records of the Riverside County Recorder's Office as Document No. 2010-0326372 in favor of Just Mortgage, Inc., in the principal amount of $212,000.  Debtor was the sole borrower on the July 2010 Deed of Trust.  A true and correct copy of the July 2010 Deed of Trust is attached hereto and incorporated herein as **Exhibit "2."**

14.    On January 26, 2012 by Grant Deed recorded in the Official Records of the Riverside County Recorder's Office as Document No. 2012-0036786, Debtor transferred the Property to Defendant for no consideration.  A true and correct copy of the January 26, 2012 Grant

1    Deed is attached hereto and incorporated herein as **Exhibit "3."**

2       15.    On September 30, 2014 by Grant Deed recorded in the Official Records of the

3    Riverside County Recorder's Office as Document No. 2014-0371699, Defendant transferred the

4    Property to Debtor, vesting title in "Young Suk Lee, a Married man as his sole and separate

5    property." A true and correct copy of the September 30, 2014 Grant Deed is attached hereto and

6    incorporated herein as **Exhibit "4."**

7       16.    On January 21, 2015 by Grant Deed recorded in the Official Records of the

8    Riverside County Recorder's Office as Document No. 2015-0025615, Debtor transferred all

9    interest in the Property to Defendant for no consideration, vesting title in "EUN KYUNG RAH, A

10   MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY." A true and correct copy

11   of the January 21, 2015 Grant Deed is attached hereto and incorporated herein as **Exhibit "5."**

12      17.    On October 30, 2020, by Interspousal Transfer Grant Deed recorded in the Official

13   Records of the Riverside County Recorder's Office as Document No. 2020-0532539, Defendant

14   transferred the Property from herself as her sole and separate property to herself and Debtor with

15   title vesting in "Young S. Lee and Eun Kyung Rah, Husband and Wife as Joint Tenants." A true

16   and correct copy of the October 30, 2020 Interspousal Transfer Grant Deed is attached hereto and

17   incorporated herein as **Exhibit "6."**

18      18.    Also on October 30, 2020 by Deed of Trust recorded in the Official Records of the

19   Riverside County Recorder's Office as Document No. 2020-0532540, the Property was

20   encumbered in favor of R M K Financial Corp. D/B/A Majestic Home Loan in the principal amount

21   of $210,000. Both Debtor and Defendant were co-borrowers on the loan, with Defendant's name

22   listed as Eun Kyong Rah. A true and correct copy of the October 30, 2020 Deed of Trust is attached

23   hereto and incorporated herein as **Exhibit "7."**

24      19.    As a result of the October 30, 2020 loan, the Deed of Trust in favor of Just Mortgage,

25   Inc. was satisfied and reconveyed by the Substitution of Trustee and Full Reconveyance recorded

26   on November 25, 2020 in the Official Records of the Riverside County Recorder's Office as

27   Document No. 2020-0592911. A true and correct copy of the November 25, 2020 Substitution of

28

1   Trustee and Full Reconveyance is attached hereto and incorporated herein as **Exhibit "8."**

2       20.    On August 30, 2022, by Interspousal Transfer Deed recorded in the Official Records

3   of the Riverside County Recorder's Office as Document No. 2022-0376899, Debtor and Defendant

4   transferred the Property to Defendant for no consideration and with title vesting in her as "Eun

5   Kyung Rah, A Married Woman as her sole and separate property" ("Transfer").  A true and correct

6   copy of the August 30, 2022 Interspousal Transfer Deed constituting the Transfer is attached hereto

7   and incorporated herein as **Exhibit "9."**

8       21.    The Trustee is informed and believes that the Transfer was a transmutation of the

9   Property from community property to Defendant's separate property.  *In re Marriage of Kushesh*

10  *& Kushesh-Kaviani*, 27 Cal. App. 5th 449 (2018).  Accordingly, the Transfer depleted the Debtor's

11  estate for which Plaintiff serves as Trustee.

12      22.    At the time of the Transfer, Debtor had been an owner of the Property and had

13  originally purchased it before he was ever married to Defendant.

14      23.    The Trustee is informed and believes and based thereon alleges that at the time of

15  the Transfer, the Property was worth at least $700,000 and as of the date of the Transfer and the

16  Property remains worth at least $700,000 as of the date of this Complaint.

17      24.    On July 12, 2024 ("Petition Date"), the Debtor filed a voluntary petition for relief

18  under chapter 7 of the Bankruptcy Code. The Transfer occurred within two (2) years before the

19  Petition Date.

20      25.    Debtor concealed the Transfer by failing to disclose it on his Statement of Financial

21  Affairs filed in the Main Bankruptcy Case where indicated on Question 18.

22      26.    Plaintiff is continuing his investigation to determine whether additional avoidable

23  transfers were made to the Defendant during the four years prior to the Petition Date and reserves

24  the right to amend this Complaint to recover any such additional avoidable transfers. Plaintiff is

25  informed and believes and based thereon alleges that any funds paid to the Defendant during the

26  four years prior to the Petition Date were fraudulent and are recoverable by Plaintiff under the

27  Bankruptcy Code.

28

## FIRST CLAIM FOR RELIEF

**[Avoidance and Recovery of Intentional Fraudulent Transfer with an Automatic Preservation for the Estate]**

**[11 U.S.C. §§ 544, 548, 550, 551; Cal. Civ. Code §§ 3439.04, 3439.07]**

27.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 26 as though set forth in full.

28.    The Transfer is of the Debtor's property.

29.    The Transfer was made on or within four (4) years of the Petition Date, but in no even longer than seven (7) years prior to the Petition Date.

30.    The Transfer was for no consideration or for less than reasonably equivalent value.

31.    The Transfer was to or for the benefit of an insider of the Debtor.

32.    The Transfer was of substantially all of the Debtor's assets.

33.    The Debtor removed or concealed assets.

34.    The Transfer was at a time when Debtor was being sued or threatened with suit.

35.    The Transfer was made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said Transfers.

36.    The Transfer occurred shortly before or shortly after Debtor incurred a substantial debt.

37.    Based on the foregoing, Plaintiff may avoid the Transfer or recover the equivalent value of the Transfer with an automatic preservation for the Estate from the Defendant, for whose benefit the aforementioned Transfer was made pursuant to 11 U.S.C. §§ 544, 548, 550, and 551, and California Civil Code §§ 3439.04 and 3439.07.

## SECOND CLAIM FOR RELIEF

**[Avoidance and Recovery of Constructive Fraudulent Transfer with an Automatic Preservation for the Estate]**

**[11 U.S.C. §544, 548, 550, 551; Cal. Civ. Code §§ 3439.04, 3439.05, 3439.07, and 3439.09]**

38.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 26 as though set forth in full.

39.     Plaintiff is informed and believes, and based thereon alleges, that there are present creditors of the Debtor that were listed at the time of the Transfer that still remain unpaid as of the Petition Date. Plaintiff is informed and believes, and based thereon alleges, that future creditors of the Debtor existed following the Transfer who remain unpaid as of the Petition Date.

40.     The Transfer was made on or within four (4) years of the Petition Date, but in no even longer than seven (7) years prior to the Petition Date.

41.     Plaintiff is informed and believes, and based thereon alleges, that the Transfer was made:

      a.   For less than reasonably equivalent value, or any value, in exchange for said Transfer; and

      b.   At a time when Debtor was insolvent and/or was rendered insolvent by virtue of said Transfer; and/or

      c.   While Debtor was engaged or about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; and/or

      d.   While the Debtor intended to incur, or believed, or reasonably should have believed the Debtor would incur debts beyond the Debtor's ability to pay them as they became due; and/or

      e.   The Debtor made the Transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

42.     Based on the foregoing, Plaintiff may avoid the Transfer and recover said Transfer or the equivalent value of the Transfer with an automatic preservation for the Estate from the Defendant, for whose benefit the aforementioned transfer was made pursuant to 11 U.S.C. §§ 544, 548, 550, and 551, and California Civil Code §§ 3439.04, 3439.05, 3439.07, and 3439.09.

/ / /

7

### THIRD CLAIM FOR RELIEF

**[Declaratory Relief]**

**[11 U.S.C. §§ 544, 548; Fed. R. Bankr. P. 7001(9)]**

43.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 26 as though set forth in full.

44.    Plaintiff and Defendant herein have a dispute in which a declaration of their respective rights is necessary.  Plaintiff is further informed and believes, and thereon alleges, that the said dispute is actual and continuing, and concerns an assertion by Defendant that she may have an equitable interest in the Property and may assert claims herein, retain the benefits of illegal or wrongful acts of other defendants herein, and/or adopt and ratify the said illegal and wrongful acts, to the damage and prejudice of Plaintiff.

45.    Plaintiff is further informed and believes, and thereon alleges, that the said dispute is actual and continuing, and concerns the continuing assertion by Defendant that she owns the Property as her sole property, to the damage and prejudice of Plaintiff.

46.    Plaintiff is informed and believes and thereon alleges that prior to the Transfer, title to the Property was vested in the Debtor and was community Property.  Community property is property of the Estate pursuant to 11 U.S.C. § 541(a)(2).

47.    Plaintiff is informed and believes that all appreciation in the Property inures to the benefit of the Estate.

48.    Based on all of the above, Plaintiff respectfully requests from this Court a declaration that the Property is property of the Estate pursuant to Section 541 of the Bankruptcy Code and that the Property must be turned over to be used and sold by the Trustee pursuant to Sections 363 and 542 of the Bankruptcy Code.

49.    The Plaintiff is entitled to declaratory relief related to this cause of action for the recovery of money or property, other than a proceeding to compel the Debtor to deliver property to the Trustee, or a proceeding under 11 U.S.C. §§ 554(b), 725, Rule 2017, or Rule 6002.

///

8

<div align="center">

**FOURTH CLAIM FOR RELIEF**

**[Unjust Enrichment]**

**[11 U.S.C. § 105]**

</div>

50.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 26 as though set forth in full.

51.    The Defendant received a benefit through the Transfer, and Defendant's retention of the aforementioned Transfer and/or the value of said Transfer results in an unjust retention of said benefit at the Estate's expense.

<div align="center">

**FIFTH CLAIM FOR RELIEF**

**[Disallowance of Claims]**

**[11 U.S.C. § 502(d)]**

</div>

52.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 51 as though set forth in full.

53.    Defendant is an entity from which property is recoverable under 11 U.S.C. § 550 and Defendant received an avoidable transfer under 11 U.S.C. §§ 544 and/or 548.

54.    Defendant has not paid the amount or turned over any such property for which Defendant is liable under 11 U.S.C. §522(i), 542, 543, 550, 553 of the Bankruptcy Code.

55.    Pursuant to 11 U.S.C. §502(d), to the extent Defendant files a claim against the Debtor's Estate, such claim should be disallowed.

<div align="center">

**SIXTH CLAIM FOR RELIEF**

**[Turnover of Property of the Estate]**

**[11 U.S.C. § 542]**

</div>

56.    Plaintiff hereby incorporates by reference paragraphs 1 through 55 and realleges these paragraphs as though set forth in full.

57.    Plaintiff is entitled to use, sell, or lease the Estate's legal and equitable interests in the Property under 11 U.S.C. § 363.

58.    Defendant shall deliver to the Plaintiff, and account for, within fourteen (14) days

<div align="center">9</div>

of the entry of Judgment in Plaintiff's favor all legal and equitable interests in the Property, or the

value of the Property, unless the Property is of inconsequential value or benefit to the Estate.

### PRAYER FOR RELIEF

WHEREFORE, the Trustee prays for Judgment as follows:

### ON THE FIRST CLAIM FOR RELIEF

1.      Avoiding the Transfer and declaring that said Transfer be annulled and rendered

void as an actual fraudulent transfer, and entering an order recovering and preserving said Transfer

for the benefit of the Estate, or the value of said Transfers for the benefit of the Estate, together

with interest thereon at the legal rate from the date of the Transfer;

### ON THE SECOND CLAIM FOR RELIEF

2.      Avoiding the Transfer and declaring that said Transfer be annulled and rendered

void as a constructive fraudulent transfer, and entering an order recovering and preserving said

Transfer for the benefit of the Estate, or the value of said Transfer for the benefit of the Estate,

together with interest thereon at the legal rate from the date of the Transfer;

### ON THE THIRD CLAIM FOR RELIEF

3.      Stating a declaration that the Property is property of the Estate pursuant to Section

541 of the Bankruptcy Code; and

4.      Finding that all appreciation in the Property inures to the benefit of the Estate;

### ON THE FOURTH CLAIM FOR RELIEF

5.      Declaring that the Defendant was unjustly enriched by the Transfer described herein,

and entering an order recovering and preserving the Transfer, or the value of the aforementioned

Transfer for the benefit of the Estate, together with interest thereon at the legal rate from the date

of the Transfer;

### ON THE FIFTH CLAIM FOR RELIEF

6.      Disallowing any claims of the Defendant if she fails or refuses to turn over the

Property, and/or the value of the Property, pursuant to 11 U.S.C. § 502(d);

/ / /

**ON THE SIXTH CLAIM FOR RELIEF**

7.     Granting turnover of all legal and equitable interests in the Property by no later than fourteen (14) days after entry of Judgment in favor of the Plaintiff.

**ON ALL CLAIMS FOR RELIEF**

8.     For interest at the applicable legal rate;

9.     For attorney's fees and costs of suit herein incurred; and

10.    For such other and further relief as the Court deems just and proper under the circumstances of this case.

Dated: August 16, 2024                          Respectfully submitted by,

**GOE FORSYTHE & HODGES LLP**

By: /s/ Brandon J. Iskander
      Robert P. Goe
      Brandon J. Iskander
      Proposed Attorneys for Plaintiff Charles
      W. Daff, Chapter 7 Trustee

11

# EXHIBIT 1

# EXHIBIT 1



DOC # 2010-0286087
06/16/2010 08:00A Fee:18.00
Page 1 of 2 Doc T Tax Paid
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder



RECORDING REQUESTED BY:
STEWART TITLE OF CALIFORNIA, INC.

AND WHEN RECORDED MAIL TO:

YOUNG SUK LEE
36178 COFFEE TREE PL.
MURRIETA, CA 92562

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|-----|------|------|-----|------|
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |
| | | | | | T: | | CTY | UNI | |

Title Order No.: 300414 -19                                          Escrow No.: 50206-SB

## GRANT DEED

T
061

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
**DOCUMENTARY TRANSFER TAX is $306.90**
[X] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[ ] Unincorporated area   [X] City of MURRIETA **AND**

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**MYO SOOK CHO, a Married Woman, as her sole and separate property**

hereby GRANT(s) to:

**YOUNG SUK LEE, a Single Man**

the real property in the City of MURRIETA, County of Riverside, State of California, described as:
LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART HEREOF
Also Known as: 36178 COFFEE TREE PLACE, MURRIETA, CA 92562
AP#: 900-132-014-0

TRA 024 -292

DATED June 1, 2010
STATE OF CALIFORNIA
COUNTY OF  Riverside
On  June 11, 2010
Before me, Aimee Abdelmessih                                          MYO SOOK CHO
A Notary Public in and for said State, personally appeared
Myo Sook Cho

who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the
State of California that the foregoing paragraph is true and correct.
**WITNESS** my hand and official seal.



AIMEE ABDELMESSIH
Commission # 1790844
Notary Public - California
Riverside County
My Comm. Expires Feb 8, 2012

Signature  _____                    (This area for official notarial seal)
MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE:

EXHIBIT 1                                                                  Page 1 of 2

# EXHIBIT A
## LEGAL DESCRIPTION

The land referred to herein is situated in the State of California, County of Riverside, City of Murrieta, and described as follows:

Parcel 1:

Lot 105 of Tract No. 29448-1, in the City of Murrieta, County of Riverside, State of California, as shown on the map recorded in Book 344 of Maps, Pages 66 through 94 inclusive, in the Office of the County Recorder of Riverside County.

Except therefrom all oil, oil rights, minerals, mineral rights, natural gas, natural gas rights, and other hydrocarbon by whatsoever name known that may be within or under the parcel of land herein above described, together with the perpetual right of drilling, mining, exploring, and operating therefore and removing the same from said land or any other land, including the right to whipstock or directionally drill and mine from lands other that those hereinabove described, oil or gas wells, tunnels, and shafts into, through or across the subsurface of the land hereinabove described, and to bottom such whipstocked or directionally drilled wells, tunnels and shafts under and beneath or beyond the exterior lines thereof, and to redrill, equip, maintain, repair, deepen and operate any such wells or mines, without, however, the right to drill, mine, explore and operate through the surface or the upper 500 feet of the subsurface of the land as reserved by various instrument of record

Parcel 2:

Easements, and rights of owners as set forth in that declaration of establishment of covenants, conditions and restrictions and reservation of easements for Murrieta Oaks, recorded on February 11, 2004 as Instrument No. 2004-0099283 in the Office of the County Recorder of Riverside County ("Declaration").

APN: 900-132-014-0

(End of Legal Description)

# EXHIBIT 2

# EXHIBIT 2

STEWART TITLE OF CALIFORNIA, INC.

*19-300414*

Recording Requested By:
JUST MORTGAGE, INC.

And After Recording Return To:
JUST MORTGAGE, INC.
9680 HAVEN AVENUE, SUITE 200
RANCHO CUCAMONGA, CALIFORNIA 91730
Loan Number: 0051187499

DOC # 2010-0326372
07/13/2010 08:00A Fee:60.00
Page 1 of 15
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder



| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|-----|------|------|-----|------|
|   |   |   | 15   |      |     |      |      |     |      |
| M | A | L | 465  | 426  | PCOR | NCOR | SMF | NCHG | EXAM |
|   |   |   |      |      | T:  |      | CTY | UNI |      |

—————————————— [Space Above This

*900-180-014*

## DEED OF TRUST

T
061

**MIN:** 1001871-0051187499-3

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "**Security Instrument**" means this document, which is dated    JULY 3, 2010             , together with all Riders to this document.
**(B)** "**Borrower**" is    YOUNG SUK LEE, A SINGLE MAN

Borrower is the trustor under this Security Instrument.
**(C)** "**Lender**" is JUST MORTGAGE, INC.

Lender is a    CALIFORNIA CORPORATION                                organized
and existing under the laws of    CALIFORNIA
Lender's address is    9680 HAVEN AVENUE, SUITE 200, RANCHO CUCAMONGA,
CALIFORNIA 91730

**(D)** "**Trustee**" is    STEWART TITLE OF CALIFORNIA
525 N. BRAND BLVD, GLENDALE, CALIFORNIA 91203

**(E)** "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F)** "**Note**" means the promissory note signed by Borrower and dated    JULY 3, 2010             .
The Note states that Borrower owes Lender    TWO HUNDRED TWELVE THOUSAND AND 00/100
Dollars (U.S. $ 212,000.00        ) plus interest.

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
AUGUST 1, 2040                    .
**(G)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☐ Planned Unit Development Rider
☐ Balloon Rider                  ☐ Biweekly Payment Rider
☐ 1-4 Family Rider               ☐ Second Home Rider
☐ Condominium Rider              ☐ Other(s) [specify]

**(J)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M)** **"Escrow Items"** means those items that are described in Section 3.
**(N)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(O)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(P)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(Q)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(R)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's

covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY              of              RIVERSIDE                :
[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
A.P.N.: 900-132-014-0

SEE EXHIBIT A

which currently has the address of  36178 COFFEE TREE PLACE
[Street]

MURRIETA              , California    92562    ("Property Address"):
[City]                        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic eForms 800-649-1362
Form 3005 01/01                          Page 3 of 14                          www.docmagic.com

EXHIBIT 2                                              Page 3 of 15

obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

   **2.   Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

   Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

   **3.   Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                      Page 4 of 14                    *DocMagic eForms* 800-649-1362
                                                                                    *www.docmagic.com*

EXHIBIT 2                                                    Page 4 of 15

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS     DocMagic *eF/orms* 800-649-1362
Form 3005 01/01                          Page 5 of 14                              www.docmagic.com

EXHIBIT 2                                                                        Page 5 of 15

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.  Lender shall have the right to hold the policies and renewal certificates.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds.  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters.  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim.  The 30-day period will begin when the notice is given.  In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property.  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

   6.  **Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

   7.  **Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property.  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition.  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage.  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

   Lender or its agent may make reasonable entries upon and inspections of the Property.  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property.  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                      Page 6 of 14                       DocMagic eForms 800-649-1362
                                                                                             www.docmagic.com

EXHIBIT 2                                                      Page 6 of 15

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                     Page 8 of 14
DocMagic *eFarms* 800-649-1362
www.docmagic.com

EXHIBIT 2                                                    Page 8 of 15

or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires

otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

   **16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

   As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

   **17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

   **18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

   **19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action**

required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

_____ (Seal)
YOUNG SUK LEE            -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

Witness:                          Witness:

_____         _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    DocMagic eForms 800-649-1362
Form 3005 01/01                          Page 13 of 14                         www.docmagic.com

EXHIBIT 2                                              Page 13 of 15

──────────── {Space Below This Line For Acknowledgment} ────────────

State of California         )
                      ) ss.
County of <u>RIVERSIDE</u>     )

On <u>July 3, 2010</u> before me, <u>CHRIS KO, Notary Public</u>

personally appeared <u>YOUNG SUK LEE</u>

_____

_____ ,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



NOTARY SIGNATURE

<u>CHRIS KO</u>
(Typed Name of Notary)

NOTARY SEAL

# EXHIBIT "A"
# LEGAL DESCRIPTION

Order No.:    300414
Escrow No:    300414

**The land referred to herein is situated in the State of California, County of Riverside, City of Murrieta, and described as follows:**

Parcel 1:

Lot 105 of Tract No. 29448-1, in the City of Murrieta, County of Riverside, State of California, as shown on the map recorded in Book 344 of Maps, Pages 66 through 94 inclusive, in the Office of the County Recorder of Riverside County.

Except therefrom all oil, oil rights, minerals, mineral rights, natural gas, natural gas rights, and other hydrocarbon by whatsoever name known that may be within or under the parcel of land herein above described, together with the perpetual right of drilling, mining, exploring, and operating therefore and removing the same from said land or any other land, including the right to whipstock or directionally drill and mine from lands other that those hereinabove described, oil or gas wells, tunnels, and shafts into, through or across the subsurface of the land hereinabove described, and to bottom such whipstocked or directionally drilled wells, tunnels and shafts under and beneath or beyond the exterior lines thereof, and to redrill, equip, maintain, repair, deepen and operate any such wells or mines, without, however, the right to drill, mine, explore and operate through the surface or the upper 500 feet of the subsurface of the land as reserved by various instrument of record

Parcel 2:

Easements, and rights of owners as set forth in that declaration of establishment of covenants, conditions and restrictions and reservation of easements for Murrieta Oaks, recorded on February 11, 2004 as Instrument No. 2004-0099283 in the Office of the County Recorder of Riverside County ("Declaration").

APN: 900-132-014-0

(End of Legal Description)

EXHIBIT 2                                    Page 15 of 15

# EXHIBIT 3

# EXHIBIT 3

DOC # 2012-0036786
01/26/2012 11:13 AM Fees: $18.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

**RECORDING REQUESTED BY:**

Lawyers Title
Mail Tax Statements to Ar C
**WHEN RECORDED MAIL TO:**

YOUNG SUK LEE
36178 COFFEE TREE PL
MURRIETA CA 92656
900132

\*\*This document was electronically submitted
to the County of Riverside for recording\*\*
Receipted by: SGOMEZ

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**APN: 900-132-014**             **GRANT DEED**

THE UNDERSIGNED GRANTOR(S) DECLARE(S):                         No Consideration
    DOCUMENTARY TRANSFER TAX is $0.00       CITY TAX is $0.00
    ☒ computed on the full value of the property conveyed, or
    ☐ computed on full value less value of liens or encumbrances remaining at the time of sale,
    ☐ Realty not sold
    ☐ Unincorporated area     ☒ City of MURRIETA, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
YOUN SUK LEE, MARRIED MAN SOLE AND SEPARATE PROPERTY

hereby GRANT(S) to EUN KYONG RAH, A MARRIED WOMAN AS SOLE AND SEPARATE PROPERTY.

the following described real property in the City of MURRIETA, County of RIVERSIDE, State of California:
As shown in Exhibit "A" attached hereto and made a part hereof, and commonly known as 36178 COFFEE TREE PL,
MURRIETA CA 92656.
"This is a bonafide gift and the grantor received in nothing in return, R&T 11911."

Dated: 12/30/2011

STATE OF CALIFORNIA               }
                        Los Angeles }ss
COUNTY OF _____          }

On December 30, 2011 _____ before me
    CHRIS KO _____, Notary Public,

personally appeared   Young Suk, Lee

who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf
of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of
California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

YOUNG SUK LEE

SPACE BELOW RESERVED FOR NOTARY SEAL

CHRIS KO
Commission # 1823112
Notary Public - California
Orange County
My Comm. Expires Nov 17, 2012

EXHIBIT 3                     Page 1 of 2

Grant Deed

# EXHIBIT A
## LEGAL DESCRIPTION

The land referred to herein is situated in the State of California, County of Riverside, City of Murrieta, and described as follows:

Parcel 1:

Lot 105 of Tract No. 29448-1, in the City of Murrieta, County of Riverside, State of California, as shown on the map recorded in Book 344 of Maps, Pages 66 through 94 inclusive, in the Office of the County Recorder of Riverside County.

Except therefrom all oil, oil rights, minerals, mineral rights, natural gas, natural gas rights, and other hydrocarbon by whatsoever name known that may be within or under the parcel of land herein above described, together with the perpetual right of drilling, mining, exploring, and operating therefore and removing the same from said land or any other land, including the right to whipstock or directionally drill and mine from lands other that those hereinabove described, oil or gas wells, tunnels, and shafts into, through or across the subsurface of the land hereinabove described, and to bottom such whipstocked or directionally drilled wells, tunnels and shafts under and beneath or beyond the exterior lines thereof, and to redrill, equip, maintain, repair, deepen and operate any such wells or mines, without, however, the right to drill, mine, explore and operate through the surface or the upper 500 feet of the subsurface of the land as reserved by various instrument of record

Parcel 2:

Easements, and rights of owners as set forth in that declaration of establishment of covenants, conditions and restrictions and reservation of easements for Murrieta Oaks, recorded on February 11, 2004 as Instrument No. 2004-0099283 in the Office of the County Recorder of Riverside County ("Declaration").

APN: 900-132-014-0

(End of Legal Description)

# EXHIBIT 4

# EXHIBIT 4



DOC # 2014-0371699
09/30/2014 02:07P Fee:18.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

**RECORDING REQUESTED BY:**

**WHEN RECORDED MAIL TO:**

Young Suk Lee

36178 Coffee Tree Pl
Murrieta, Ca 92562



| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|-----|------|------|-----|------|
| / | | | 2 | | | | | | |
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |
| | | | | | | T: | | CTY | UNI |

*SPACE ABOVE THIS LINE FOR RECORDER'S USE*

**APN: 900-132-014**

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S):
DOCUMENTARY TRANSFER TAX is $0.00      CITY TAX is $0.00
☐ computed on the full value of the property conveyed, or
☐ computed on full value less value of liens or encumbrances remaining at the time of sale,
☐ Realty not sold
☐ Unincorporated area      ☒ City of Murrieta, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
Eun Kyong Rah, a Married Woman as her sole and separate property.

hereby GRANT(S) to Young Suk Lee, a Married man as his sole and separate property.

the following described real property in the City of Murrieta, County of Riverside, State of California:
As shown in Exhibit "A" attached hereto and made a part hereof, and commonly known as 36178 Coffee Tree Pl

This is a bonafide gift and grantor received nothing in return. "R & T 11911"

Dated: 7/24/2014

STATE OF CALIFORNIA                    }
                                       }ss
COUNTY OF _____Orange_____          }

On ___July 24, 2014___ before me
___CHRIS KO___, Notary Public,

personally appeared ___Eun Kyong Rah___

who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf
of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of
California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _____

Eun Kyong Rah

SPACE BELOW RESERVED FOR NOTARY SEAL



CHRIS KO
Commission # 2003886
Notary Public - California
Orange County
My Comm. Expires Jan 13, 2017

EXHIBIT 4                                      Page 1 of 2

Grant Deed

# EXHIBIT A
## LEGAL DESCRIPTION

The land referred to herein is situated in the State of California, County of Riverside, City of Murrieta, and described as follows:

Parcel 1:

Lot 105 of Tract No. 29448-1, in the City of Murrieta, County of Riverside, State of California, as shown on the map recorded in Book 344 of Maps, Pages 66 through 94 inclusive, in the Office of the County Recorder of Riverside County.

Except therefrom all oil, oil rights, minerals, mineral rights, natural gas, natural gas rights, and other hydrocarbon by whatsoever name known that may be within or under the parcel of land herein above described, together with the perpetual right of drilling, mining, exploring, and operating therefore and removing the same from said land or any other land, including the right to whipstock or directionally drill and mine from lands other that those hereinabove described, oil or gas wells, tunnels, and shafts into, through or across the subsurface of the land hereinabove described, and to bottom such whipstocked or directionally drilled wells, tunnels and shafts under and beneath or beyond the exterior lines thereof, and to redrill, equip, maintain, repair, deepen and operate any such wells or mines, without, however, the right to drill, mine, explore and operate through the surface or the upper 500 feet of the subsurface of the land as reserved by various instrument of record

Parcel 2:

Easements, and rights of owners as set forth in that declaration of establishment of covenants, conditions and restrictions and reservation of easements for Murrieta Oaks, recorded on February 11, 2004 as Instrument No. 2004-0099283 in the Office of the County Recorder of Riverside County ("Declaration").

APN: 900-132-014-0

(End of Legal Description)

EXHIBIT 4                                      Page 2 of 2

# EXHIBIT 5

# EXHIBIT 5



DOC #2015-0025615
01/21/2015 04:06P Fee:18.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor, County Clerk & Recorder

**RECORDING REQUESTED BY:**

**WHEN RECORDED MAIL TO:**

EUN KYUNG RAH

36178 COFFEE TREE PL
MURRIETA, CA 92562

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|-----|------|------|-----|------|
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |
| | | | | | | T: | CTY | UNI | 525 |

(18)

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN: 900-132-014     **GRANT DEED**

C

THE UNDERSIGNED GRANTOR(S) DECLARE(S):
DOCUMENTARY TRANSFER TAX is $0.00     CITY TAX is $0.00
☐ computed on the full value of the property conveyed, or
☐ computed on full value less value of liens or encumbrances remaining at the time of sale,
☐ Realty not sold
☐ Unincorporated area     ☒ City of MURRIETA, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
YOUNG SUK LEE, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

hereby GRANT(S) to EUN KYUNG RAH, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

the following described real property in the City of MURRIETA, County of Riverside, State of California:
As shown in Exhibit "A" attached hereto and made a part hereof, and commonly known as 36178 COFFEE REE PL

NO CONSIDERATION. 11911.

Dated: 12/22/2014

STATE OF CALIFORNIA     }
COUNTY OF _Orange_     }ss

On _December 22, 2014_ before me
_CHRIS KO_, Notary Public,

personally appeared _Young Suk Lee_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _____

_YOUNG SUK LEE_

SPACE BELOW RESERVED FOR NOTARY SEAL

CHRIS KO
Commission # 2003886
Notary Public - California
Orange County
My Comm. Expires Jan 13, 2017

Grant Deed

EXHIBIT 5     Page 1 of 2

# EXHIBIT A
## LEGAL DESCRIPTION

The land referred to herein is situated in the State of California, County of Riverside, City of Murrieta, and described as follows:

Parcel 1:

Lot 105 of Tract No. 29448-1, in the City of Murrieta, County of Riverside, State of California, as shown on the map recorded in Book 344 of Maps, Pages 66 through 94 inclusive, in the Office of the County Recorder of Riverside County.

Except therefrom all oil, oil rights, minerals, mineral rights, natural gas, natural gas rights, and other hydrocarbon by whatsoever name known that may be within or under the parcel of land herein above described, together with the perpetual right of drilling, mining, exploring, and operating therefore and removing the same from said land or any other land, including the right to whipstock or directionally drill and mine from lands other that those hereinabove described, oil or gas wells, tunnels, and shafts into, through or across the subsurface of the land hereinabove described, and to bottom such whipstocked or directionally drilled wells, tunnels and shafts under and beneath or beyond the exterior lines thereof, and to redrill, equip, maintain, repair, deepen and operate any such wells or mines, without, however, the right to drill, mine, explore and operate through the surface or the upper 500 feet of the subsurface of the land as reserved by various instrument of record

Parcel 2:

Easements, and rights of owners as set forth in that declaration of establishment of covenants, conditions and restrictions and reservation of easements for Murrieta Oaks, recorded on February 11, 2004 as Instrument No. 2004-0099283 in the Office of the County Recorder of Riverside County ("Declaration").

APN: 900-132-014-0

(End of Legal Description)



2015-0025615
01/21/2015 04:06P
2 of 2

EXHIBIT 5                                                    Page 2 of 2

# EXHIBIT 6

# EXHIBIT 6

DOC #2020-0532689
09/30/2020 04:24 PM Fees: $20.00
Page 1 of 3
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

\*\*This document was electronically submitted
to the County of Riverside for recording\*\*
Receipted by: MARIA #309

PLEASE COMPLETE THIS INFORMATION
RECORDING REQUESTED BY:

LAWYERS TITLE COMPANY

AND WHEN RECORDED MAIL TO:

YOUNG S. LEE AND EUN KYUNG RAH
36178 COFFEE TREE PLACE
MURRIETA CA 92562

Space above this line for recorder's use only

# INTERSPOUSAL TRANSFER GRANT DEED

ORDER NO.: 220583892                    Title of Document
A.P.N.: 900-132-014

**TRA:** 024-292

**DTT:** $ 0.00

**Exemption reason declared pursuant to Government Code 27388.1**

☐ This document is a transfer that is subject to the imposition of documentary transfer tax.

☐ This is a document recorded in connection with a transfer that is subject to the imposition
of documentary transfer tax.
Document reference:_____

☑ This document is a transfer of real property that is a residential dwelling to an owner-
occupier.

☐ This is a document recorded in connection with a transfer of real property that is a
residential dwelling to an owner-occupier.
Document reference:_____

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
($3.00 Additional Recording Fee Applies)

ACR 238 (Rev. 01/2018)            Available in Alternate Formats
EXHIBIT 6                                   Page 1 of 3

RECORDING REQUESTED BY
LAWYERS TITLE

RECORDING REQUESTED BY:
Team Escrow, Inc.
Order No. 220583892
Escrow No. 20-44041-SP
Parcel No. 900-132-014

AND WHEN RECORDED MAIL TO:

YOUNG S. LEE AND EUN KYUNG RAH
36178 COFFEE TREE PLACE
MURRIETA, CA 92562

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## INTERSPOUSAL TRANSFER GRANT DEED

(Excluded from reappraisal under California Constitution Act 13 A 1.et.seq.)

DOCUMENTARY TRANSFER TAX $NONE

This is an Interspousal Transfer and not a change in ownership under §63 of the Revenue and Taxation Code and Grantor(s) has (have) checked the applicable exclusion from reappraisal:

☐ From Joint Tenancy to Community Property
☒ From One Spouse to Both Spouses

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, GRANTOR
**Eun Kyung Rah, a Married Woman as her sole and separate property**

hereby GRANTS to **Young S. Lee and Eun Kyung Rah, Husband and Wife as Joint Tenants**

the real property in the City of **Murrieta** County of **Riverside**, State of California:
See the exhibit "A" attached hereto and made a part hereof.

More commonly known as: **36178 Coffee Tree Place, Murrieta, CA 92562**

Dated   October 26, 2020

Eun Kyung Rah

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF Orange   } S.S.

On October 26, 2020 before me, Nicole Ko, notary public,
personally appeared Eun Kyung Rah
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

NICOLE KO
COMM. # 2182927
NOTARY PUBLIC • CALIFORNIA
ORANGE COUNTY
Comm. Exp. FEB. 11, 2021

Mail Tax Statements to: SAME AS ABOVE or Address Noted Below

EXHIBIT 6                                              Page 2 of 3

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN IS SITUATED IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 105 OF TRACT NO. 29448-1, IN THE CITY OF MURRIETA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN ON THE MAP RECORDED IN BOOK 344 OF MAPS, PAGES 66 THROUGH 94 INCLUSIVE, IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY.

EXCEPT THEREFROM THE MINERALS, OIL, GAS, AND OTHER HYDROCARBON SUBSTANCES LYING BELOW THE SURFACE OF SAID LAND.

PARCEL 2:

EASEMENTS, AND RIGHTS OF OWNERS AS SET FORTH IN THAT DECLARATION OF ESTABLISHMENT OF COVENANTS, CONDITIONS AND RESTRICTIONS AND RESERVATION OF CASEMENTS FOR MURRIETA OAKS, RECORDED ON FEBRUARY 11,2004 AS INSTRUMENT NO. 2004-0099283 IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY ("DECLARATION").

ASSESSOR'S PARCEL NUMBER: 900-132-014

EXHIBIT 6                                                                    Page 3 of 3

# EXHIBIT 7

# EXHIBIT 7

DOC # 2020-0532540
10/30/2020 04:24 PM Fees: $75.00
Page 1 of 18
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

PLEASE COMPLETE THIS INFORMATION
RECORDING REQUESTED BY:

LAWYERS TITLE COMPANY

AND WHEN RECORDED MAIL TO:

R M K FINANCIAL CORP.
D/B/A MAJESTIC HOME LOAN
1819 S. EXCISE AVE
ONTARIO CA 91761

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: MARIA #309

Space above this line for recorder's use only

# DEED OF TRUST

ORDER NO.: 220583892                    Title of Document
A.P.N.: 900-132-014

TRA: 024-292

DTT: $ 0.00

**Exemption reason declared pursuant to Government Code 27388.1**

☐ This document is a transfer that is subject to the imposition of documentary transfer tax.

☐ This is a document recorded in connection with a transfer that is subject to the imposition
of documentary transfer tax.
Document reference:_____

☐ This document is a transfer of real property that is a residential dwelling to an owner-
occupier.

☑ This is a document recorded in connection with a transfer of real property that is a
residential dwelling to an owner-occupier.
Document reference: RECORDING CONCURRENTLY HEREWITH

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
($3.00 Additional Recording Fee Applies)

RECORDING REQUESTED BY
LAWYERS TITLE

~~Recording Requested By:~~
~~R M K FINANCIAL CORP. D/B/A MAJESTIC HOME LOAN~~
~~1819 S. EXCISE AVE~~
~~ONTARIO, CALIFORNIA 91761~~
And After Recording Return To:
R M K FINANCIAL CORP.
D/B/A MAJESTIC HOME
LOAN
1819 S. EXCISE AVE
ONTARIO, CALIFORNIA 91761
Loan Number: 0031160350

──────────── [Space Above This Line For Recording Data] ────────────

# DEED OF TRUST

**MIN:** 1005843-0031160350-6                    **MERS Phone: 888-679-6377**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** **"Security Instrument"** means this document, which is dated     OCTOBER 25, 2020     , together with all Riders to this document.
**(B)** **"Borrower"** is YOUNG S LEE AND EUN KYONG RAH, HUSBAND AND WIFE AS JOINT TENANTS
BORROWER'S ADDRESS IS 36178 COFFEE TREE PLACE, MURRIETA, CALIFORNIA 92562.

Borrower is the trustor under this Security Instrument.
**(C)** **"Lender"** is R M K FINANCIAL CORP. D/B/A MAJESTIC HOME LOAN

Lender is a          CALIFORNIA CORPORATION          organized and existing under the laws of          CALIFORNIA
Lender's address is 1819 S. EXCISE AVE, ONTARIO, CALIFORNIA 91761

**(D)** **"Trustee"** is R M K FINANCIAL CORP. D/B/A MAJESTIC HOME LOAN, A CALIFORNIA CORPORATION
1819 S. EXCISE AVE, ONTARIO, CALIFORNIA 91761

**(E)** **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security**

**Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)** **"Note"** means the promissory note signed by Borrower and dated  OCTOBER 25, 2020
The Note states that Borrower owes Lender  TWO HUNDRED TEN THOUSAND AND 00/100
Dollars (U.S. $ 210,000.00              ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
NOVEMBER 1, 2050          .

**(G)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Planned Unit Development Rider
☐ Balloon Rider      ☐ Biweekly Payment Rider
☐ 1-4 Family Rider      ☐ Second Home Rider
☐ Condominium Rider      ☐ Other(s) [specify]

**(J)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M)** **"Escrow Items"** means those items that are described in Section 3.

**(N)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
    COUNTY                    of                    RIVERSIDE                    :
    [Type of Recording Jurisdiction]                  [Name of Recording Jurisdiction]
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 900-132-014

which currently has the address of         36178 COFFEE TREE PLACE
                                                   [Street]

    MURRIETA                    , California    92562    ("Property Address"):
    [City]                                      [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    **UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

    1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,

---

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          *DocMagic eForms*
Form 3005  01/01                          Page 3 of 15                           *www.docmagic.com*

treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section

15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.   Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.   Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of

any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage

Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law.  These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11.  Assignment of Miscellaneous Proceeds; Forfeiture.**  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability

under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005  01/01                         Page 11 of 15                         *DocMagic eForms*
                                                                              *www.docmagic.com*

Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

---

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005  01/01                                 Page 12 of 15

*DocMagic eForms*
*www.docmagic.com*

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          *DocMagic eForms*
Form 3005  01/01                            Page 13 of 15                               *www.docmagic.com*

Page 14 of 18

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

_____ (Seal)
YOUNG S LEE                     -Borrower

_____ (Seal)
EUN KYONG RAH                   -Borrower

_____
Witness

_____
Witness

*DocMagic eForms*
*www.docmagic.com*

——————————————— [Space Below This Line For Acknowledgment] ———————————————

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of __CALIFORNIA__ )

County of __RIVERSIDE__ )

On _October 26, 202?_ before me, _Nicole Ko, Notary public_
        Date                              Here Insert Name and Title of the Notarizing Officer

personally appeared __YOUNG S LEE AND EUN KYONG RAH__

_____ ,

Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



NICOLE KO
COMM. # 2182927
NOTARY PUBLIC • CALIFORNIA
ORANGE COUNTY
Comm. Exp. FEB. 11, 2021

_Signature of Notary Public_

        Notary Seal

Loan Originator: CHRISTOPHER J KO, NMLSR ID 345387
Loan Originator Organization: FIRST ASSOCIATED INVESTMENT INC, NMLSR ID
1017651

---

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS       **DocMagic eForms**
Form 3005  01/01
Page 15 of 15

Loan Number: 0031160350

Date: OCTOBER 25, 2020

Property Address:  36178 COFFEE TREE PLACE
                   MURRIETA, CALIFORNIA 92562

## EXHIBIT "A"

## LEGAL DESCRIPTION

A.P.N. # : 900-132-014

*DocMagic eForms*
*www.docmagic.com*

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN IS SITUATED IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 105 OF TRACT NO. 29448-1, IN THE CITY OF MURRIETA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN ON THE MAP RECORDED IN BOOK 344 OF MAPS, PAGES 66 THROUGH 94 INCLUSIVE, IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY.

EXCEPT THEREFROM THE MINERALS, OIL, GAS, AND OTHER HYDROCARBON SUBSTANCES LYING BELOW THE SURFACE OF SAID LAND.

PARCEL 2:

EASEMENTS, AND RIGHTS OF OWNERS AS SET FORTH IN THAT DECLARATION OF ESTABLISHMENT OF COVENANTS, CONDITIONS AND RESTRICTIONS AND RESERVATION OF CASEMENTS FOR MURRIETA OAKS, RECORDED ON FEBRUARY 11,2004 AS INSTRUMENT NO. 2004-0099283 IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY ("DECLARATION").

ASSESSOR'S PARCEL NUMBER: 900-132-014

EXHIBIT 7                                    Page 18 of 18

# EXHIBIT 8

# EXHIBIT 8

Page 1 of 1
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder

**This document was electronically submitted
to the County of Riverside for recording**
Receipted by: ALYCIA #778

[REQUESTED BY]
**NATIONWIDE TITLE CLEARING, INC.**
[WHEN RECORDED MAIL TO]
**Nationstar Mortgage LLC c/o NTC**
**C/O Nationwide Title Clearing,**
**Inc. 2100 Alt. 19 North**
**Palm Harbor, FL 34683**

**Loan Number 0659634661**

## SUBSTITUTION OF TRUSTEE and FULL RECONVEYANCE

The undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR JUST MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS,** as the current beneficiary of that certain Deed of Trust executed by **YOUNG SUK LEE** (Trustor), and recorded 07/13/2010 in the Office of the Recorder of **RIVERSIDE** County, State of **California**, **Doc # 2010-0326372**, of Official Records, does in accordance with the provisions of said Deed of Trust hereby substitute **NATIONWIDE TITLE CLEARING, INC.** as Trustee in place and stead of the Trustee therein, and does hereby vest **NATIONWIDE TITLE CLEARING, INC.** as substituted Trustee with all rights, title, estate, power, duty and trusts conferred by said Deed of Trust;

**Dated this 23rd day of November in the year 2020**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR JUST MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS**

_Cecelia Mansfield_
**CECELIA MANSFIELD**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.
WHEREAS the current beneficiary having represented to the Trustee that the obligation secured by said Deed of Trust has been fully paid and/or satisfied,

NOW THEREFORE, **NATIONWIDE TITLE CLEARING, INC.**, as substituted Trustee, DOES HEREBY GRANT AND RECONVEY unto the parties entitled thereto, without warranty, all the estate and interest granted to said Trustee under said Deed of Trust in the lands therein described, situated in the County of RIVERSIDE, State of California. Reference being hereby made specifically to said Deed of Trust and the record thereof for a particular description of said lands.
**NATIONWIDE TITLE CLEARING, INC.**

_Mary Mojica_
**MARY MOJICA**
**VICE PRESIDENT**

STATE OF FLORIDA    COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization this 23rd day of November in the year 2020, by **Cecelia Mansfield** and **Mary Mojica** as VICE PRESIDENT and   VICE PRESIDENT , respectively, on behalf of their respective entities, who, as such VICE PRESIDENT and  VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. They are personally known to me.

_Julie Martens_
**JULIE MARTENS**
**COMM EXPIRES: 5/22/2022**

JULIE MARTENS
Notary Public - State of Florida
Commission # GG 221059
My Comm. Expires May 22, 2022
Bonded through National Notary Assn.

**Document Prepared By:  Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
NSMRC 418113201  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)  LSET   MIN 100187100511874993 MERS PHONE 1-888-679-6377 MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026  DOCR T232011-12:18:16 [C-1]  ERCNCA61




EXHIBIT 8    *D0064261787*    Page 1 of 1

# EXHIBIT 9

# EXHIBIT 9

RECORDING REQUESTED BY

Chris Ko

AND WHEN RECORDED MAIL TO:

Name    Eun Kyung Rah
Street
Address  36178 Coffee Tree Pl
City     Murrieta, CA 92562
State
Zip

**2022-0376899**

08/30/2022 01:19 PM Fee: $ 92.00
Page 1 of 2
Recorded in Official Records
County of Riverside
Peter Aldana
Assessor-County Clerk-Recorder



5553

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**Interspousal Transfer Deed**

Grant Deed (Excluded from Reappraisal Under Proposition 13, i.e., Calif. Const. Art 13A§1 et. seq.)

The undersigned Grantor(s) declare(s) under penalty of perjury that the following is true and correct:

Documentary transfer tax is $ 0

☐ Computed on full value of property conveyed, or ☐ Computed on full value less value of liens and encumbrances remaining at time of sale, or ☒ is exempt from imposition of the Documentary Transfer Tax pursuant to Revenue and Tax Code §11927(a), on transferring community, quasi-community, or quasi-marital property, assets between spouses, pursuant to a judgment, an order, or a written agreement between spouses in contemplation of any such judgement or order.

☐ Other exemptions: (state reason and give Code § or Ordinance number) _____

☐ Unincorporated area: ☐ City of _____ and

This is a Interspousal Transfer under §63 of the Revenue and Taxation Code and Grantor(s) has (have) checked the applicable exclusion from Reappraisal under Proposition 13:

☐ A transfer to a trustee for the beneficial use of a spouse, or the surviving spouse of a deceased transferor, or by a trustee of such a trust to the spouse of the trustor,

☐ A transfer which takes effect upon the death of a spouse,

☐ A transfer to a spouse or former spouse in connection with a property settlement agreement or decree of dissolution of a marriage or legal separation, or

☐ A creation, transfer, or termination, solely between spouses, of any co-owner's interest.

☐ The distribution of a legal entity's property to a spouse or former spouse in exchange for the interest of such spouse in the legal entity in connection with a property settlement agreement or a decree of dissolution of a marriage or legal separation.

☐ Other: _____

**GRANTOR(S):** Young S. Lee and Eun Kyung Rah. Husband and Wife as Joint Tenant

**hereby GRANT(S) to** Eun Kyung Rah, a Married Woman as her sole and separate property

**the following described real property in the County of** _____ Riverside _____ **, State of California**

Please see attached Exhibit "A"

Assessor's Parcel No. 900-132-014

Dated: 06/22/2022

_____ SIGNATURE  Young S. Lee

_____ SIGNATURE  Eun K Rah

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _____ Orange _____

On _June 22, 2022_ before me, _Chris Ko, Notary public_ [name & title of officer], personally appeared _Young S. Lee, Eun K. Rah_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
SIGNATURE

CHRIS KO
Notary Public - California
Orange County
Commission # 2353590
My Comm. Expires Apr 2, 2025

EXHIBIT 9                    [SEAL]                    Page 1 of 2

MAIL TAX STATEMENTS TO:
[Revised January 1, 2015]      NAME      ADDRESS      CITY, STATE, ZIP

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN IS SITUATED IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 105 OF TRACT NO. 29448-I, IN THE CITY OF MURRIETA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN ON THE MAP RECORDED IN BOOK 344 OF MAPS, PAGES 66 THROUGH 94 INCLUSIVE, IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY.

EXCEPT THEREFROM THE MINERALS, OIL, GAS, AND OTHER HYDROCARBON SUBSTANCES LYING BELOW THE SURFACE OF SAID LAND.

PARCEL 2:

EASEMENTS, AND RIGHTS OF OWNERS AS SET FORTH IN THAT DECLARATION OF ESTABLISHMENT OF COVENANTS, CONDITIONS AND RESTRICTIONS AND RESERVATION OF CASEMENTS FOR MURRIETA OAKS, RECORDED ON FEBRUARY 11, 2004 AS INSTRUMENT NO. 2004-0099283 IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY ("DECLARATION").

ASSESSOR'S PARCEL NUMBER: 900-132-014

EXHIBIT 9                          Page 2 of 2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 17701 Cowan Avenue, Suite 210, Lobby D, Irvine, CA 92614

A true and correct copy of the foregoing document entitled (*specify*): **COMPLAINT FOR: 1. AVOIDANCE AND RECOVERY OF INTENTIONAL FRAUDULENT TRANSFERS AND RECOVERY OF SAME [11 U.S.C. §§ 544, 548, 550, 551; CAL. CIV. CODE §§ 3439.04, 3439.07]; 2. AVOIDANCE AND RECOVERY OF CONSTRUCTIVE FRAUDULENT TRANSFERS AND RECOVERY OF SAME [11 U.S.C. §§ 544, 548, 550, 551; CAL. CIV. CODE §§ 3439.04, 3439.05, 3439.07]; 3. DECLARATORY RELIEF [11 U.S.C. §§ 544, 548; FED. R. BANKR. P. 7001(9)]; 4. UNJUST ENRICHMENT [11 U.S.C. § 105]; 5. DISALLOWANCE OF CLAIMS [11 U.S.C § 502(d)]; AND 6. TURNOVER OF PROPERTY OF THE ESTATE [11 U.S.C. § 542].** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On August 16, 2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Charles W Daff (TR)**    charleswdaff@gmail.com, c122@ecfcbis.com
- **Ryan A. Ellis**    ryan@ryanellislaw.com, billing@ryanellislaw.com
- **United States Trustee (RS)**    ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) August 16, 2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) August 16, 2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

- The Honorable Magdalena Reyes Bordeaux, USBC, 3420 Twelfth Street, Suite 365, Riverside, CA 92501

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 16, 2024 | Susan C. Stein | /s/Susan C. Stein |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

12

Robert P. Goe – State Bar No. 137019
Brandon J. Iskander – State Bar No. 300916
**GOE FORSYTHE & HODGES LLP**
17701 Cowan, Building D, Suite 210
Irvine, CA 92614
rgoe@goeforlaw.com
biskander@goeforlaw.com

Telephone: (949) 798-2460
Facsimile: (949) 955-9437

Proposed Attorneys for Plaintiff Charles W. Daff,
Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION

| | |
|---|---|
| In re | Case No. 6:24-bk-13975-RB |
| YOUNG SUK LEE, | Chapter 7 |
| Debtor. | Adv. No. 6:24-ap-01068-RB |
| | |
| CHARLES W. DAFF, solely in his capacity as chapter 7 trustee for the bankruptcy estate of YOUNG SUK LEE, | **NOTICE OF COMPLIANCE WITH LOCAL BANKRUPTCY RULE 7026-1** |
| Plaintiff, | **Status Conference Hearing:** |
| vs. | Date:   November 19, 2024 |
| | Time:   2:00 p.m. |
| EUN KYUNG RAH, aka EUN KYONG RAH, an individual, | Place:  Courtroom 303 |
| | U.S. Bankruptcy Court |
| Defendant. | 3420 Twelfth Street |
| | Riverside, CA 92501 |

## **LBR 7026-1. DISCOVERY**

**(a)**    **General.**    Compliance with FRBP 7026 and this rule is required in all adversary

proceedings.

　　　　(1)    Notice. The plaintiff must serve with the summons and complaint a notice that

compliance with FRBP 7026 and this rule is required.

　　　　(2)    Proof of Service. The plaintiff must file a proof of service of this notice together

with the proof of service of the summons and complaint.

- 1 -

**(b)**     <u>**Discovery Conference and Disclosures.**</u>

(1)     <u>Conference of Parties</u>. Unless all defendants default, the parties must conduct the meeting and exchange the information required by FRBP 7026 within the time limits set forth therein.

(2)     <u>Joint Status Report</u>. Within 7 days after such meeting, the parties must prepare a joint status report containing the information set forth in LBR 7016-1(a)(2). The joint status report will serve as the written report of the meeting required by FRBP 7026.

**(c)**     <u>**Failure to Make Disclosures or Cooperate in Discovery.**</u>

(1)     <u>General</u>. Unless excused from complying with this rule by order of the court for good cause shown, a party must seek to resolve any dispute arising under FRBP 7026-7037 or FRBP 2004 in accordance with this rule.

(2)     <u>Meeting of Counsel</u>. Prior to the filing of any motion relating to discovery, counsel for the parties must meet in person or by telephone in a good faith effort to resolve a discovery dispute. It is the responsibility of counsel for the moving party to arrange the conference. Unless altered by agreement of the parties or by order of the court for cause shown, counsel for the opposing party must meet with counsel for the moving party within 7 days of service upon counsel of a letter requesting such meeting and specifying the terms of the discovery order to be sought.

(3)     <u>Moving Papers</u>. If counsel are unable to resolve the dispute, the party seeking discovery must file and serve a notice of motion together with a written stipulation by the parties.

(A)     The stipulation must be contained in 1 document and must identify, separately and with particularity, each disputed issue that remains to be determined at the hearing and the contentions and points and authorities of each party as to each issue.

(B)     The stipulation must not simply refer the court to the document containing the discovery request forming the basis of the dispute. For example, if the sufficiency of an answer to an interrogatory is in issue, the stipulation must contain,

verbatim, both the interrogatory and the allegedly insufficient answer, followed by each party's contentions, separately stated.

(C) In the absence of such stipulation or a declaration of counsel of noncooperation by the opposing party, the court will not consider the discovery motion.

(4) Cooperation of Counsel; Sanctions. The failure of any counsel either to cooperate in this procedure, to attend the meeting of counsel, or to provide the moving party the information necessary to prepare the stipulation required by this rule within 7 days of the meeting of counsel will result in the imposition of sanctions, including the sanctions authorized by FRBP 7037 and LBR 9011-3.

(5) Contempt. LBR 9020-1 governing contempt proceedings applies to a discovery motion to compel a non-party to comply with a deposition subpoena for testimony and/or documents under FRBP 7030 and 7034.

Dated: August 20, 2024

**GOE FORSYTHE & HODGES LLP**

By: /s/ Brandon J. Iskander
Robert P. Goe
Brandon J. Iskander
Attorneys for Plaintiff Charles W. Daff, chapter 7 trustee for the bankruptcy estate of YOUNG SUK LEE

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

 17701 COWAN, SUITE 210, BLDG. D, IRVINE, CA 92614

A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004–1]** and (2) the accompanying pleading(s) entitled:

COMPLAINT, EARLY MEETING OF COUNSEL AND STATUS CONFERENCE INSTRUCTIONS, AND NOTICE OF COMPLIANCE

WITH LOCAL BANKRUPTCY RULE 7026-1

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005–2(d); and **(b)** in the manner stated below:

    **1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) AUGUST 20, 2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

 Charles W Daff (TR)   charleswdaff@gmail.com, c122@ecfcbis.com;  Brandon J. Iskander  biskander@goeforlaw.com,
 kmurphy@goeforlaw.com;  United States Trustee (RS)  ustpregion16.ecf@usdoj.gov

    ☐  Service information continued on attached page

    **2. SERVED BY UNITED STATES MAIL**: On (date) AUGUST 20, 2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

 Eun Kyung Rah aka Eun Kyong Rah
 36178 Coffee Tree Place
 Murrieta, CA 92562

    ☐  Service information continued on attached page

    **3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) AUGUST 20, 2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Magdalena Reyes Bordeaux, USBC, 3420 Twelfth Street, Suite 365, Riverside, CA 92501

    ☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 20, 2024 | Susan C. Stein | /s/Susan C. Stein |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

*December 2016*                                                  **F 7004–1.SUMMONS.ADV.PROC**